**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      **v.**                          **Case No. 21-20027-01-JAR**

**G'ANTE BUTLER,**

      **Defendant.**

## MEMORANDUM AND ORDER

Defendant G'Ante Butler was convicted by a jury of forcible assault of a federal officer (Count 1), and using or carrying a firearm during and in relation to a crime of violence (Count 2).[1]  The jury also found that Defendant discharged the firearm in Count 2.[2]  The Court took under advisement Defendant's oral motion for judgment at the close of the government's case, and his renewed motion at the close of trial.  For the reasons discussed below, the Court denies Defendant's oral motions for judgment of acquittal.

### I.  Background

The following facts were presented at trial and are viewed in the light most favorable to the government.  In the summer of 2020, Kansas City, Kansas experienced a significant increase in violent crime, particularly shootings.  The Department of Justice ("DOJ") launched a federal task force to combat rising violence in certain cities, which was called Operation Relentless Pursuit.  As part of this national operation, several Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agents were embedded in the Kansas City, Kansas Police

---

[1] Doc. 205 (Verdict Form).

[2] *Id.*

Department ("KCKPD").  Several KCKPD detectives were cross-deputized to work with the ATF officers as part of the federal task force, which authorized the local detectives to make federal arrests and execute federal search warrants.  The task force focused on the high rate of shootings in Kansas City, Kansas, and particularly on retaliatory shootings between rival gangs or groups.

On August 3, 2020, task force officers were notified of a drive-by shooting in the early afternoon.  A victim, Temani Boykin, was shot in the knee.  Several task force officers responded to the scene of the shooting, which was a house on Farro Avenue, and quickly developed a suspect vehicle based on witness interviews.  The Farro Avenue house belonged to the Butler family, and it had been previously targeted in drive-by shootings due to rivalries between the Butler brothers and a rival group.[3]  Based on this history, and the suspect vehicle, task force officers went to a house associated with the rival group, and found the suspect vehicle hidden in the bushes.  The house was located at 1913 N. Allis Street, and belonged to Isaiah Shields.  Task force officers arrested Shields, and then sought a search warrant to search his house for evidence.

Task force officer Doleshal, a KCKPD detective, applied for the warrant and it was granted by a Wyandotte County District Judge.  Task force officers began to search the Allis Street house at approximately 10:00 p.m.  Four ATF Special Agents—Nicholas Graham, Bruce Coleman, Lennea Gordon, and Frank Preston—as well as three KCKPD task force officers— Nathan Doleshal, Jamie Miller, and Jakob Blackman—were present for the search.  The officers searched the house for approximately one hour and found only one cartridge casing.  During this

---

[3] The Butler brothers belonged to a group that referred to themselves as "Tasha."  There was an existing feud between the Tasha group and a group known as "BBU."

time, the other residents in the house were waiting outside on the porch.  After the officers

completed the search, they told the occupants they could go inside.  Several officers remained on

the porch talking to the residents of the house, and several other officers began walking towards

their government-owned vehicles parked on the street to head home.

Then, the officers saw lights in the field across the street and heard gunfire.  Soon, they

realized that multiple shooters were shooting at them.  The gunfire lasted for approximately 15

seconds, and the agents took cover behind their vehicles and behind the porch supports.  The

officers could not see any of the assailants.  Immediately after the shooting stopped, the officers

assessed injuries and called EMS.  One of the civilians standing on the porch had been injured,

but there were no fatalities.  Though the officers swept the field after the shooting, the officers

did not make any arrests because the shooters ran away.

Given that the Butler house had been targeted in a drive-by shooting earlier the same day,

the task force officers suspected that the Allis Street shooting had been retaliatory.  After the task

force officers conducted an investigation, the matter was submitted to the Grand Jury, which

indicted G'Ante Butler, Zarion Butler, Chase Lewis, Nadarius Barnes, and Donnell Hall on June

2, 2021.[4]  All five defendants were charged with forcible assault of a federal officer, and using or

carrying a deadly weapon during and in relation to a crime of violence.  Zarion Butler, Lewis,

Barnes, and Hall pled guilty.  G'Ante Butler went to trial.  After a 7-day trial, the jury

unanimously convicted G'Ante Butler of both charges.

## II.     Legal Standard

Rule 29 provides that "[a]fter the government closes its evidence or after the close of all

the evidence, the court on the defendant's motion must enter a judgment of acquittal of any

---

[4] Doc. 1.

offense for which the evidence is insufficient to sustain a conviction."[5]  Rule 29 allows the Court to reserve decision on the motion, but provides that the Court must decide the motion on the basis of the evidence at the time the ruling was reserved.[6]  Defendant orally moved for judgment of acquittal twice—at the close of the government's evidence and at the close of all evidence— and the Court reserved judgment on both motions.  Thus, the Court may consider the entire record in ruling on Defendant's renewed motion, but must consider the evidence at the close of the government's evidence in ruling on the first motion for acquittal.[7]

In deciding a Rule 29 motion, the court may not weigh the evidence or assess the credibility of the witnesses.[8]  "Rather, the Court must 'view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt.'"[9]  "Acquittal is proper only if the evidence implicating defendant is nonexistent or is 'so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"[10]  Accordingly, as long as the jury's inferences and conclusions are reasonable, the court will not disrupt the verdict.[11]

## III.   Discussion

### A.   Count 1

---

[5] Fed. R. Crim. P. 29(a).

[6] Fed. R. Crim. P. 29(b).

[7] *See United States v. Penn*, No. 20-cr-0152, 2022 WL 1773812, at *2 (D. Colo. 2022) (explaining that, since the defendants renewed their motions for acquittal at the close of the evidence, the court may also consider the defendants' evidence (citation omitted)).

[8] *United States v. Parker*, 521 F. Supp. 2d 1174, 1176 (D. Kan. 2007).

[9] *Id.* (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

[10] *Id.* (quoting *White*, 673 F.2d at 301).

[11] *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005) (citing *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000)).

To find Defendant guilty of forcible assault of a federal officer under 18 U.S.C. § 111(b), the government had to prove beyond a reasonable doubt that: (1) Defendant forcibly assaulted one of the seven officers; (2) the person assaulted was a federal officer who was engaged in the performance of his or her official duty; (3) Defendant did such acts intentionally; and (4) in doing such acts, Defendant used a deadly weapon.[12]  Defendant raises a general sufficiency challenge on Count 1, but also makes specific legal and factual arguments on the second element by asserting that none of the victims were federal officers, and that none of them were engaged in the performance of official duties at the time of the shooting.

Below, the Court first considers Defendant's specific arguments on the second element of Count 1, and then turns to the general sufficiency of the evidence for each element.[13]  The Court finds that that none of Defendant's specific arguments on the second element are persuasive, and that there was sufficient evidence in the government's case-in-chief for a reasonable jury to find Defendant guilty of Count 1 beyond a reasonable doubt.  Therefore, Defendant's motion for judgment of acquittal is denied on Count 1.

### 1.      Federal Officer

Defendant's specific arguments on the second element center around a legal, jurisdictional claim that the officers were not federal officers, and a factual claim that the officers were not engaged in the performance of their official duties at the time of the shooting. Defendant did not substantiate his arguments with briefing, and quoted only one case and one

---

[12] *See* Doc. 203 at 13–14; *United States v. Kendall*, 876 F.3d 1264, 1270–71 (10th Cir. 2017).

[13] *See United States v. Anthony*, 942 F.3d 955, 972 (10th Cir. 2019) (A general motion for acquittal . . . constitutes a challenge to 'the sufficiency of each essential element of the government's case.'" (quoting *United States v. Kelly*, 535 F.3d 1229, 1234–35 (10th Cir. 2008))).

state statute to support his claims.  After a careful review of the case law, the Court finds none of the arguments persuasive.

### a.       Scope of "Federal Officer" under Statute

Defendant asserts that he cannot be convicted of the forcible assault of a federal officer because none of the seven victims were federal officers.  He states that the four ATF officers lost their federal identity by working with the KCKPD, executing a state search warrant, and investigating a state crime.  He further argues that the three, cross-deputized detectives were acting in their capacity as state officers because they were executing a state warrant, for a state crime.  As described more fully below, the Court finds that all seven officers qualified as federal officers under § 111 at the time of the shooting.

Regardless of whether the jury found Defendant guilty of Count 1 as a principal, or as an aider and abettor, the relevant definition of "federal officer" comes from 18 U.S.C. § 1114.  Section 111 specifically provides that "[w]hoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with *any person designated in section 1114* of this title while engaged in or on account of the performance of official duties" shall be criminally liable.[14]  Thus, "[t]hose protected by § 111(a) are enumerated in 18 U.S.C. § 1114."[15]  Section 1114 protects a broad category of people, namely

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties,

---

[14] 18 U.S.C. § 111(a)(1) (emphasis added).

[15] *United States v. Holder*, 256 F.3d 959, 963 (10th Cir. 2001) (citation omitted).  Cases interpreting § 111(a) are equally applicable to Defendant's conviction under § 111(b), because § 111(b) merely provides an enhanced penalty for those who carry out the conduct proscribed in § 111(a) while using a deadly weapon.  *See* 18 U.S.C. § 111(b) ("Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon . . . or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.").

or any person assisting such an officer or employee in the
performance of such duties or on account of that assistance.[16]

"'The type of individual encompassed by § 1114 is a legal question for the court,' subject to de novo review."[17]

The Tenth Circuit considered a nearly identical factual scenario in *United States v. Martin*, where the court held that a local police detective who had been deputized to participate in a joint task force with the FBI was a federal officer.[18]  *Martin* looked to § 111 precedent to decide whether the detective was a federal officer under a separate statute, § 115(a)(1)(B), which criminalized threatening to murder federal officers.[19]  The Tenth Circuit liberally characterized the detective as a federal officer within the meaning of the statute because he was deputized to participate in a federal investigation, and alternatively held that the detective would also satisfy the "assisting a federal officer" portion of § 1114.[20]

For the same reasons, the Court finds that the three cross-deputized KCKPD detectives were federal officers under the statute.  While each detective remained a KCKPD employee, they were all deputized to participate in national investigations and were working closely with ATF to respond to violent crimes in the Kansas City area.  And even if the cross-deputized detectives were not federal officers under the statute, the four ATF officers unquestionably satisfied the federal officer requirement.

---

[16] 18 U.S.C. § 1114.

[17] *United States v. Ama*, 97 F. App'x 900, 901 (10th Cir. 2004) (quoting *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998), cert. denied, 526 U.S. 1137 (1999)).

[18] 163 F.3d 1212, 1215 (10th Cir. 1998).

[19] As with § 111, the statute in *Martin* expressly pointed to § 1114 for the definition of those who are protected under the Code.  *See id.* ("[B]oth the assault statute and the threat statute rely on § 1114's definition of protected persons.").

[20] *Id.*

In its review of the case law, the Court has found no precedent to support Defendant's argument that federal officers can lose federal protections by working with state law enforcement agencies. This absence of precedent is notable given that courts frequently hold that state officers, and even private citizens, can be considered federal officers when working with federal officers.[21] But even in those scenarios, the state officers or private citizens do not lose their employment status. Rather, they simply gain protection under federal statutes because of the assistance they provided to federal officers. These statutes extend federal protections to otherwise non-federal persons because, in passing § 111, "Congress intended to protect *both* federal officers and federal functions."[22] There is no inverse policy rationale for depriving federal officials of statutory protections, merely because the federal employees collaborated with state agencies. To do so would run counter to congressional intent, and would disincentivize collaboration between federal and state law enforcement.

The Court finds that all seven officers qualify as federal officers under § 111. Thus, the Court's instruction to the jury that all seven victims were federal officers was correct. The three cross-deputized KCKPD detectives were either federal officers, or persons assisting federal officers as defined by § 1114. And even if the detectives did not qualify as federal officers, the four ATF agents are undoubtedly protected under § 111. Notably, the jury's verdict included a

---

[21] *See id.* (finding that a state police detective qualified as a federal officer under § 1114); *United States v. Diamond*, 53 F.3d 249, 252 (9th Cir. 1995) (finding that a local law enforcement officer, who was cross-deputized as a special United States Marshal, qualified as a federal officer under § 111 even though he was assaulted while intervening in a state law crime); *United States v. Chunn*, 347 F.2d 717, 721 (4th Cir. 1965) (holding that a state employee who was "on loan" to the IRS qualified as a federal officer because he was assisting federal officers); *United States v. Hooker*, 997 F.2d 67, 74 (5th Cir. 1993) (finding that a state officer was protected under §§ 111 and 1114 because he was acting in cooperation with federal officers in a federal operation when he was assaulted); *see also United States v. Holder*, 256 F.3d 959, 965 (10th Cir. 2001) (concluding that a private citizen was protected under § 111 by assisting a federal employee with the performance of official duties).

[22] *See Holder*, 256 F.3d at 963 (quoting *United States v. Feola*, 420 U.S. 671, 679, 683–84 (1975) (emphasis in original)).

special interrogatory, asking them to find which of the seven officers had been forcibly assaulted. The jury answered that all seven officers had been assaulted.[23]  Since the government only needed to prove that Defendant assaulted one federal officer for the jury to find him guilty of Count 1, Defendant's argument fails as a matter of law.

### b.    Performance of Official Duties

Defendant also argues that, even if all the victims qualified as federal officers, the second element cannot be met because the officers were acting outside the scope of their official duties at the time of the shooting.  Defendant offers three arguments for why the officers were not acting within the scope of their official duties: (1) the officers had completed the search and were standing outside the Allis Street house talking about personal matters; (2) the officers were executing a state search warrant which did not authorize federal officers to execute the search; and (3) the search warrant itself was invalid.  Defendant's arguments are both legal and factual, thus, the Court first sets out the law and then considers the facts.  In its consideration of the facts, the Court considers whether there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that any of the federal officers were engaged in the performance of official duties at the time of the shooting.[24]  The Court finds that a reasonable jury could do so.

The Tenth Circuit "interpret[s] liberally the meaning of 'while engaged or on account of the performance of official duties' in §§ 111 and 1114, recognizing '[e]ach case . . . requires a fact specific analysis, but no case will turn on any one factor.'"[25]  The test to determine whether an officer is performing official duties is "inherently fluid" and focuses on "whether the federal

---

[23] Doc. 205.

[24] *Martin*, 163 F.3d at 1214 ("[T]he jury must decide the ultimate issue of fact—whether [the officer] was engaged in the performance of federal duties." (citation omitted)).

[25] *United States v. Ama*, 97 F. App'x 900, 902 (10th Cir. 2004) (quoting *Holder*, 256 F.3d at 965).

agent is 'simply acting within the scope of what the agent is employed to do.  The test is whether the agent is acting within that compass or is engaging in a personal frolic of [his] own.'"[26]  In describing the fluidity of the "official duties" analysis, the Tenth Circuit noted that

> Assailants have faced criminal liability under §§ 111 and 1114 when they assaulted[:] an off-duty park ranger enforcing park rules, an off-duty DEA officer getting a haircut and overhearing a robbery in progress, an IRS agent repossessing a car, a federal judge walking to the federal courthouse on a Sunday evening to research a case, a federal agent detaining a state-charged suspect, and an off-duty deputy U.S. Marshal arresting a suspect after coming upon a street fracas.[27]

Defendant's first argument that the officers' official duties ended when the search ended, or when the officers discussed personal matters, is unpersuasive.  The Tenth Circuit has specifically cautioned that courts should "refuse[] to cage 'official duties' either with a rigid time line or highly circumscribed activity."[28]  The government offered evidence in its case-in-chief that, at the time of the shooting, the officers had just finished conducting the search of the house. They were wearing protective gear, they were armed, and they carried official identification. Several of the officers were actively walking to their government vehicles when the first shots were fired, and others were on the porch.  None of the officers had enough time between the completion of the search and the shooting to get into their vehicles and start driving home.[29] Based on the fluid definition of "official duties," it would be unreasonable to find that the officers were engaged in personal frolics when they hesitated outside the recently-searched residence to chat with each other.  Rather, there was sufficient evidence for a reasonable jury to

---

[26] *Holder*, 256 F.3d at 963 (quoting *United States v. Hoffer*, 869 F.2d 123, 126 (2d Cir. 1989)).

[27] *Id.* at 964 (internal citations omitted).

[28] *Id.* (quoting §§ 111 and 1114).

[29] *See United States v. Perea*, 818 F. Supp. 2d 1293, 1313 (D.N.M. 2010) ("Courts of Appeals have found that a federal officer is within the scope of his or her official duties when traveling in his or her government-issued vehicle, and when on the way to or from work." (citations omitted)).

find beyond a reasonable doubt that the officers were still engaged in the performance of official duties at the time of the shooting.

Defendant's second and third arguments assert that the officers were acting outside the scope of their official duties because the warrant did not authorize them to conduct the search, or was otherwise invalid. But the Court is persuaded by the reasoning of several cases that found it irrelevant whether a federal officer's actions were lawful in considering whether the officers were acting within the scope of their official duties. In *United States v. Young*, the Tenth Circuit held that the validity of an IRS summons was irrelevant to determining whether the IRS officer was acting in the scope of his official duties while serving the summons.[30] The court stated "we are not here concerned with whether the service of the IRS summons on [the defendant] constituted valid service. Even assuming that such was not proper service, such fact would not mean that under 18 U.S.C. § 111 [the officer] was somehow acting [o]utside his official duties."[31]

Similarly, in *United States v. Heliczer*, a Second Circuit case quoted favorably in *Young*, the defendant challenged his conviction under 18 U.S.C. § 111 by arguing that the U.S. Marshals he assaulted were acting outside their official duties by unlawfully arresting him.[32] The Second Circuit found this argument untenable, noting that the "official duties" test simply asks whether the officer is "acting within the scope of what the agent is employed to do."[33] The court went on

---

[30] 614 F.2d 243, 244 (10th Cir. 1980)

[31] *Id.*

[32] 373 F.2d 241, 245 (2d Cir. 1967).

[33] *Id.*

to note that "[i]t cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful."[34]

The same rationale applies here.  Even assuming that the warrant was invalid, either because it did not authorize federal officers to execute the search[35] or because the affidavit was unsigned,[36] executing the search warrant was within the official duties of all seven officers.  The officers were not engaging in a personal frolic by executing a potentially invalid warrant.  In sum, there was sufficient evidence for a reasonable jury to find that the second element was satisfied because all the officers were engaged in the performance of official duties at the time of the shooting.

Finally, Defendant referenced Fed. R. Crim. P. 41 during his oral motion for judgment of acquittal, arguing that the search did not conform with federal procedural requirements.  Rule 41 provides, in relevant part, that a federal magistrate judge should issue federal warrants, and that state judges may issue federal warrants only if a magistrate judge is not reasonably available.[37] However, the Court does not engage in a Rule 41 analysis because it is irrelevant to Defendant's claim.  Defendant does not argue that illegally obtained evidence was introduced against him, as

---

[34] *Id.*; *see also In re Barrett*, 840 F.3d 1223, 1228 (10th Cir. 2016) (declining to consider the defendant's claim that a law-enforcement officer was acting outside the scope of his official duties because the officer was executing an invalid warrant, because "executing warrants is undeniably a part of an officer's official duties. Defendant cites no authority for the proposition that killing an officer executing a warrant does not violate the federal law under which he was prosecuted if the warrant is later found to be invalid.").

[35] The Court is unpersuaded by this argument because the warrant specifically authorizes Detective Doleshal to execute the warrant—which he did.  The fact that ATF officers assisted with the search does not, by itself, invalidate the warrant.  Regardless, the validity of the warrant is irrelevant to the determination of whether the officers were engaged in the performance of their official duties.

[36] Though the Court need not determine the validity of the warrant, the Court notes that K.S.A. § 22-2502 requires only that the affidavit on which a warrant is based be made "under oath or affirmation."  Detective Doleshal's affidavit explicitly states that he was "first duly sworn upon [his] oath," and the judge further confirms in the warrant itself that the judge had "evidence under oath before [him]."  *See* Def. Exhibit 810.  Thus, though there is no affirmation or signature, the warrant could satisfy K.S.A. § 22-2502 since the affidavit was made under oath.

[37] *See* Fed. R. Crim. P. 41(b).

could be the case if the warrant was invalid or illegally executed.  In fact, Defendant never filed a motion to suppress pretrial, and does not presently seek suppression.  This is because the case is not about *what* the officers found inside the house;[38] it is about what happened to the officers *after* they exited the house.  Thus, the typical Rule 41 analysis is inapplicable.[39]

In sum, Defendant challenges the validity of the warrant not to object to the evidence recovered, but to argue that, if the warrant was invalid, then the federal officers were not engaged in the performance of their official duties.  For this reason, the Court focuses its analysis on the "official duties" determination, not on suppression.  As described above, a reasonable jury could find beyond a reasonable doubt that all seven officers were engaged in the performance of their official duties at the time of the shooting.  Thus, none of Defendant's specific legal arguments on the second element warrant a judgment of acquittal.

### 2.    Forcible Assault

To prove the first element of Count 1, the government needed to prove that Defendant forcibly assaulted one of the officers.  The government focused its case on proving that Defendant personally committed forcible assault by participating in the shooting.[40]  The Court

---

[38] In fact, the Allis Street house belonged to Isaiah Shields, a rival gang member.  The task force officers were searching the house on suspicion that Shields shot at the Butler residence earlier that day.  None of the evidence retrieved from the search could have been used to prove Defendant's guilt in this case.

[39] If the Court found that the search was federal in character, and that the warrant did not comply with Rule 41, the typical test would then consider whether (1) there was prejudice, i.e. the search would not have occurred but for the violation of the rule; or (2) there is evidence that the failure to follow Rule 41 was intentional and deliberate. *United States v. Pennington*, 635 F.2d 1387, 1390 (10th Cir. 1980) (citing *United States v. Burke*, 517 F.2d 377, 387 (2d Cir. 1975)).  If either of these factors were met, then the evidence obtained from the search would be excluded.  As is obvious from the discussion of the test itself, such a remedy would have no effect on the government's case against Defendant.

[40] The government also charged Defendant under 18 U.S.C. § 2 as an aider and abettor.  To prove Count 1 under an aider and abettor theory, the government needed to prove beyond a reasonable doubt that all four elements of forcible assault of a federal officer were committed by someone other than Defendant, and that Defendant intentionally associated himself with the crime and intentionally participated in it as something he wished to bring about.  *See* Doc. 203 at 15; *Rosemond v. United States*, 572 U.S. 65, 71 (2014).  Since the Court finds that there was sufficient evidence for the jury to find Defendant guilty of Count 1 as a principal, the Court need not analyze the evidence proving the alternative theory that Defendant aided and abetted the shooting.

finds that a reasonable jury could have found beyond a reasonable doubt that Defendant committed forcible assault based on the following evidence offered by the government in its case-in-chief: (1) testimony from Chase Lewis which identified Defendant as one of the shooters; (2) expert testimony placing Defendant's gun, a 40-caliber Glock-22, at the crime scene based on toolmark analysis;[41] (3) expert testimony identifying Defendant's DNA on cartridge casings found at the scene; (4) expert testimony tracking Defendant's snapchat location data, which corroborated that Defendant was with the other shooters at all relevant times; and (5) testimony from law enforcement personnel which identified Defendant as a member of the Tasha gang and described the tensions between the Tasha gang and Shields' group, known as BBU.

To be sure, Defendant offered his own theory of the case. He testified that he was at his girlfriend's apartment at the time of the shooting, that his brother, Zarion Butler, had taken his gun to the shooting without Defendant's knowledge, and that Defendant had then retrieved the gun the next day, which is why it was found on Defendant's person when he was arrested. Zarion Butler's testimony at trial supported Defendant's version of events, while contradicting his earlier statement to police. However, the Court will not weigh evidence on a motion for judgment of acquittal.[42] The government offered evidence in its case-in-chief proving its theory of the case—that Defendant was one of the shooters. The jury believed this theory over Defendant's theory, and it was reasonable for them to do so. Thus, the government presented sufficient evidence in its case-in-chief for a reasonable jury to find that Defendant personally committed forcible assault against the officers.

---

[41] The government offered evidence that 19 of the casings found at the scene were fired from the firearm found in Defendant's pants upon arrest.

[42] *United States v. Parker*, 521 F. Supp. 2d 1174, 1176 (D. Kan. 2007).

### 3.      Intent

To prove the intent element of Count 1, the government did not need to prove that Defendant intended to assault federal officers engaged in the performance of official duties.[43] Rather, the government only needed to prove that Defendant acted intentionally when he committed the forcible assault.[44]  Based on the above-listed evidence, offered in the government's case-in-chief, the Court finds that there was sufficient evidence for a reasonable jury to find that Defendant intentionally, forcibly assaulted the officers beyond a reasonable doubt.

### 4.      Deadly Weapon

To prove the fourth element of Count 1, the government needed to show that Defendant committed the forcible assault with a deadly weapon.  As the Court described above, there was a wealth of evidence in the government's case-in-chief that tied Defendant's gun to the crime scene, and identified Defendant as one of the shooters.  Thus, the Court finds that there was sufficient evidence for a reasonable jury to find that Defendant committed the forcible assault of federal officers by using a deadly weapon beyond a reasonable doubt.

In sum, when viewing the evidence in the light most favorable to the government, the Court finds that there was sufficient evidence in the government's case-in-chief for a reasonable jury to find Defendant guilty of forcible assault of a federal officer beyond a reasonable doubt.[45] Defendant's motion for judgment of acquittal on Count 1 is denied.

---

[43] *See United States v. Feola*, 420 U.S. 671, 686 (1975) (holding that the fact that a victim is a federal officer is jurisdictional only, meaning that the statute does not require knowledge that the victim is a federal officer).

[44] *See id.*

[45] *See Taylor v. Workman*, 554 F.3d 879, 893 (10th Cir. 2009) ("Jurors are presumed to follow their instructions." (citing *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993))).

**B.      Count 2**

To find Defendant guilty of using or carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c), the government needed to prove beyond a reasonable doubt that: (1) Defendant committed the crime of forcible assault of a federal officer, which is a crime of violence; and (2) Defendant used or carried a firearm; (3) during and in relation to the forcible assault of a federal officer.[46]

Much of the government's evidence proving Count 1 is also probative of Count 2.  Since the jury found Defendant guilty of Count 1, the only independent proof the government needed to offer on the elements of the § 924(c) charge is that Defendant used or carried a firearm during and in relation to the forcible assault.  The government chose to focus its evidence on proving that Defendant was one of the shooters.[47]  In particular, the following evidence introduced by the government in its case-in-chief is probative of Count 2: (1) Defendant's gun cartridges found at the scene; (2) Defendant's DNA found on the cartridges from the scene; (3) Chase Lewis's testimony identifying Defendant as one of the shooters; (4) pictures and videos of Defendant with his gun; (5) pictures of various members of the Tasha gang with the guns later used in the shooting; and (6) the aforementioned evidence supporting an inference that Defendant was not at his girlfriend's house during the time of the shooting.

---

[46] *See* Doc. 203 at 16–17; *United States v. Shuler*, 181 F.3d 1188, 1189–90 (10th Cir. 1999).

[47] As with Count 1, the government also charged Defendant with Count 2 as an aider and abettor.  To find Defendant guilty of Count 2 as an aider and abettor, the government needed to prove that: (1) the crime of using or carrying a firearm during and in relation to a crime of violence was committed by someone other than Defendant; (2) Defendant intentionally associated himself in some way with the crime and intentionally participated in it as something he wished to bring about; and (3) Defendant knew in advance of the crime of violence that the other person would use or carry a firearm during and in relation to that crime.  *See* Doc. 203 at 18; *Rosemond v. United States*, 572 U.S. 65, 82–83 (2014).  Since the Court finds that there was sufficient evidence for the jury to find Defendant guilty of Count 2 as a principal, the Court need not analyze the evidence proving the alternative theory that Defendant aided and abetted the shooting.

The Court finds that this evidence is sufficient, when viewed in the light most favorable to the government, for a reasonable jury to find beyond a reasonable doubt that Defendant used or carried a firearm during and in relation to the forcible assault of a federal officer.  The evidence is also sufficient to find beyond a reasonable doubt that Defendant discharged his firearm, a special verdict question under Count 2.  Therefore, the Court denies Defendant's motion for judgment of acquittal on Count 2.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's oral motions for judgment of acquittal are **denied**.

**IT IS SO ORDERED.**

Dated: March 1, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE